## Stirling Coal and Coke Co. v. Fork.

### (Decided December 2, 1910.)

## Appeal from Hopkins Circuit Court.

1. Master and Servant—Safe Tools and Appliances.—The rule requiring the master to exercise ordinary care to furnish the servant reasonably safe tools and appliances to work with, does not extend to simple implements that are used for simple purposes in places free from danger.

2. Application of Principle.—Appellee, a man of mature years and ordinary intelligence, was employed to use a shovel in pitching coal slack into a car. There was a crack in the handle of the shovel that pinched the thumb of appellee while using it. To recover damages for complications that resulted from the injury, he brought this action against the master. Held, that under the evidence there can be no recovery.

BELCHER & SPARKS for appellant.

LETCHER B. FOX for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Fork, a man of mature years and ordinary intelligence was employed by appellant company to shovel coal slack into a car and was told to get a shovel that had been used by others who had done the same kind of work. When appellee picked up the shovel, he discovered that the round wooden piece on the top of the handle was cracked in one or two places, so that the wood revolved on the iron rod that was run through it for the purpose of strengthening the handle. He then said to the foreman that he did not want to use that shovel, and thereupon the foreman told him to go ahead and work with it, that others had been using it and he could do so and that he would get him another one. This was all that was said about the shovel. Soon after this, and on the same day, appellee's thumb was pinched by the crack in the handle, causing a slight bruised place, but he continued to work during the day. On the next day, his hand became inflamed and blood poisoning set up, with the result that appellee lost considerable time and suffered no little. To recover damages for the injury sustained as he alleged by the defect in the shovel, he brought this action and on a trial was awarded damages in the sum of $275.

A good part of the record is taken up with the question of whether or not the blood poisoning resulted from the bruise on his thumb or a cut on the hand that he received in another way. But, in view of the conclusion we have reached it is not necessary to discuss the cause of the blood poisoning. The rule has been frequently announced by this court that it is the duty of the master to exercise ordinary care to furnish the servant reasonably safe tools and appliances with which to work, and that if he fails to do this and the servant is injured by reason of the defective tools or appliances, he may maintain an action in damages to compensate him for the injuries sustained. Pullman Co. v. Geller, 128 Ky. 72; Rogers v. South Covington Street Ry. Co. 112 S. W. 630; Louisville Hotel Co. v. Kaltenbrun, 24 Ky. Law Rep., pages 208, 669; American Tobacco Co. v. Adams, 137 Ky. 414. To this rule there are qualifications and exceptions growing out of assurances of safety made by the master, promises to repair, and risks assumed by the servant, but we will not go into these branches of the law. We think we may properly put this case upon the ground that the tool furnished to appellee, as well as the use to which he put it, was so simple, and the place it was being used so free from danger that he should not be allowed to recover for the injury sustained, assuming that it was caused by the defect in the handle. It must be recognized by every one that the rule of safe tools and appliances should not be extended to every tool and every appliance that is used by laborers and servants in the ordinary every-day affairs of life. There are few persons in employments of any kind who do not at some time or in some way use implements or tools (using these words in their broadest sense) in the performance of their duties or services. Some of these tools and implements are of the simplest character and are used in the simplest way; and in the performance of labor or service that is free from danger. There is nothing complicated about many of them, and their nature is such that any person of ordinary intelligence can at once use them without instructions or assistance. It often happens that they get out of repair or become defective by use, but the defects are patent to any person who handles them and generally can be easily and quickly repaired by the servant who is using them. Implements and tools like these are used in the house, on the farm, and in fact everywhere. They embrace the utensils in the kitch-

en, many articles used in the ordinary household duties, as well as hoes, rakes, spades, and other like implements in common and daily use on every farm. And it would be going far beyond the reason of the safe appliance doctrine to extend it to a coffee pot with a loose handle, in the ordinary household kitchen, or to a house broom with a splintered handle, or a kitchen hatchet that was dull, or a garden hoe that was broken, or a farm spade that was out of repair, or other implements quite as simple in their make and use. If the servants in every possible field of labor should be protected by this rule, and have the right to seek damages in the courts for the most trifling injury suffered in the ordinary and usual use of these simple things, the master in every state of case that can be imagined would be held accountable for accident or injury, and thus a useful and valuable rule would be converted into a constant source of vexation and apprehension. The further effect would be to encourage servants to be entirely indifferent to their own safety and furnish them an ever-present incentive to litigation. And so we think, the line where non-liability begins in a case like this ought to be in the very reason of the thing fixed at some place, for to carry the doctrine of liability everywhere and enlarge it to embrace everything would verge on the ridiculous. It must, however, be admitted that it is difficult to draw the line at a place that will be fair and just to the servant and at the same time remove the application of the rule from the field of absurdity to which it might be extended. Every case that comes up involving defective appliances presents different facts, and with these varying states of facts the courts must deal in an effort to be sensible as well as just to both parties. In the solution of this question it would be hazardous as well as impracticable to attempt to set down any hard and fast standard by which to determine when the master is liable and when he is not. In view of this condition we will not undertake to say what states of facts the rule of liability should embrace, and what states of facts it should not. We are content to say that under the facts presented by this record we feel sure of the correctness of our position. It would be difficult to find a simpler tool than a shovel, or one that is in more common use. There is scarcely a child of five who does not know what a shovel is, nor is there a school boy who could not use one with safety. Appellee knew the handle of the shovel was cracked, and knowing this he could

not well avoid the knowledge that possibly or probably his finger might get pinched. The place at which he worked was entirely free from danger, and he could easily have removed the prospect of injury by putting something around the handle to make it safe.

We have not considered the argument of counsel in reference to the promise to repair or furnish a better shovel, because the doctrine that protects the servant when he works under an assurance that the thing is safe or will be repaired, has no application to the facts of this case. American Tobacco Co. v. Adams, 137 Ky. 414.

Wherefore, the judgment is reversed, with directions to dismiss the petition.