MIDDLETON *v.* FAULKNER *et al.*

(Division B.   Feb. 7, 1938.)

[178 So. 583.   No. 32969.]

**Vollor & Teller**, of Vicksburg, for appellant.

**R. R. Norquist,** of Yazoo City, and **Wynn, Hafter & Lake,** for appellees.

**Griffith, J.**, delivered the opinion of the court.

Appellees at the time of the injury herein were engaged in cutting certain timber and converting same into cordwood for shipment. Appellant, who sues by next friend, was a minor seventeen years of age, wholly without experience in such work, or in the use of the tool which caused the injury; and those facts appellees knew. Appellees employed appellant as a laborer, and among the tools furnished him was a wedge which was worn down and battered. As appellant started to work, a fellow employee suggested to him that the wedge was not suitable for use and that another should be obtained. Appellant thereupon took the wedge to the foreman in charge, who stated that there was no other wedge available; and after inspecting the wedge, the foreman assured appellant that the wedge was sufficient and could be safely used. Appellant, relying on that assurance, proceeded to work and shortly thereafter, when the wedge was struck by appellant, as was necessary to be done in the course of the work, a sliver of steel flew therefrom and destroyed appellant's left eye.

Such further facts as were necessary to a clear presentation of the cause of action were set forth in the declaration and will be mentioned in the course of the following opinion. The demurrer of appellees to the declaration was sustained on the ground of no cause of action under the simple-tool doctrine. Appellant declined to amend; the action was dismissed, and the case is now before us on the sufficiency of the cause as stated in the declaration.

In the early days of the law when the lives of the peo-

ple in matters of avocation were almost entirely concerned with the home, the farm, the herds, and to some extent, of course, with primitive transportation, the tools and implements used by the servant or laborer were the utensils of the kitchen, the crude plow, the hoe, the rake, the spade, the hatchet, the axe, the wedge, the maul, the saddle, the oxcart, and like implements of the simplest kind, used in the simplest way. The servant himself looked after the tools, made his own inspections, and repaired them when necessary or had it done under his own supervision. There was no occasion for any rules of law which would impose upon the master any duty or obligation in respect to them.

But as machinery and instrumentalities of a complicated nature were invented and came into use, and situations were thereby produced with which the servant could not adequately cope, in the construction, installation, location, maintenance, and repair of such instrumentalities, the rules of law arose, out of necessity, that the master should exercise reasonable care to furnish his servant with reasonably safe places to work, reasonably safe tools and appliances, and that the master should use reasonable care to keep them so.

But as these modern rules of obligation on the part of the master arose and became definitely established, they were made to apply only to the situations or conditions which furnished the reasons therefor, and therefore were not extended back to the simpler tools of earlier days and those similar thereto. Thus the common law of to-day, as declared in numerous decisions of this court, is that ordinarily the master is under no obligation of care in regard to the safety of simple tools, either in the furnishing thereof or in their maintenance and repair. Wausau Southern Lumber Co. v. Cooley, 130 Miss. 333, 94 So. 228; Bear Creek Mill Co. v. Fountain, 130 Miss. 436, 94 So. 230; Allen Gravel Co. v. Yarbrough, 133 Miss. 652, 98 So. 117; Jones v. Southern United Ice Co., 167 Miss. 886, 150 So. 652; Middleton v. National Box

Co., D. C., 38 F. (2d) 89. Compare Parker v. Wood Lumber Co., 98 Miss. 750, 54 So. 252, 40 L. R. A. (N. S.) 832; Mitchell v. Brooks, 165 Miss. 826, 147 So. 660; Mississippi Utilities Co. v. Smith, 166 Miss. 105, 145 So. 896; Hercules Powder Co. v. Tyrone, 155 Miss. 75, 124 So. 74, 475; Gulf, etc., R. Co. v. Graham, 153 Miss. 72, 117 So. 881; Laurel Mills v. Ward, 134 Miss. 447, 99 So. 11.

As noted from the above cases, as well as in the numerous cases in other jurisdictions, 18 R. C. L., page 564, note 11, the line of demarcation between what is a simple tool, and what is not, is often difficult to draw; the point beyond which the master's liability goes no further is sometimes hard to locate precisely. The historical development of the rule is an aid, of course, but always, modern conceptions of reason and justice, under modern legal standards, must be brought to bear. Of tools without any complications in their structure, and of such ordinary and every day use that any person of mature age, or of experience although not mature in years, and of normal intelligence, would have substantially as much knowledge as another and could use them in the ordinary and normal manner in which they are intended to be used without any probability of injury, without any more than a bare possibility of injury, it may be conclusively said the master has no liability. As to such tools the servant, if of mature age or of any experience, must depend upon his own judgment; must be his own inspector; and must take care as to repairs, doing this himself or having it done, or else getting another such tool, of which as is usually the case there are others of like kind within the ready reach or requisition of the servant.

But beyond what has just been said we do not think the rule of nonliability can be pressed. The law molds its rules in the light of the known characteristics of human nature, as it must do in order to be a system of justice rather than of injustice. The law takes notice, therefore, and requires employers to take notice, that an employee, who is of far less years than that which presup-

poses maturity and stamina of independent judgment, and who is without the experience which would compensate for the want of age, is not capable of the reflective and reasoning power, the distinct and deliberate full realization of danger, and the firm exercise of his own judgment as is expected of a mature grown man, and in such cases, and to the extent which is just and reasonable, employers must govern themselves accordingly. To hold a master to such a responsibility is in accord with a sound public policy and with good morals, is practicable and is reasonable; and where these four elements are found in complete combination, there the substantive common law is almost certain to be found also.

Here, according to the allegations of the declaration, admitted by the demurrer, the master knew of the youthfulness and immaturity of the employee; knew that he had no experience in the work and none in the use of the tool with which he was required to work; knew the dangerous condition of the tool and of its liability to produce injury, in the usual and normal use thereof; declined to furnish another, and assured the employee that the tool was safe; knew or is conclusively presumed to have known that such a youthful and inexperienced employee would accept and rely upon the judgment and assurance of the master as inexperienced youth is wont to do as regards those who are superior in position and experience, and the employee here did so rely. In such a case our opinion is that the master cannot avoid the consequences of the injury which his stated conduct and assurance has thus brought about.

In all the cases heretofore decided by this court in which the simple-tool doctrine was applied, the servant was either of mature years or of some experience. None of them, so far as we have been able to find, has applied that doctrine to a case such as we have now before us. Many expressions may be found, however, in some of the opinions in our previous cases which distinctly foreshadow what we are here holding. Cases in other juris-

dictions, sufficiently in point upon the facts, sustain our conclusion. Duerst v. St. Louis Stamping Co., 163 Mo. 607, 621, 63 S. W. 827; Marston v. City of Portsmouth, 78 N. H. 223, 99 A. 93; Shadford v. Ann Arbor, etc., Ry. Co., 121 Mich. 224, 80 N. W. 30.

We think the demurrer should have been overruled. Reversed and remanded.